1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10

11

12   IN RE: RUBBER CHEMICALS      )
     ANTITRUST LITIGATION,        )
13                               )        No. C04-1648 MJJ (BZ)
                                  )            (Lead Case)
14   **This document relates to:**  )
                                  )        **ORDER DENYING PLAINTIFF'S**
15       **C07-1057 MJJ (BZ)**       )        **MOTION TO COMPEL DISCOVERY**
                                  )
16                               )
     _____ )
17

18

19        May plaintiff discover communications between a

20   defendant's affiliate and the European Commission that were

21   made pursuant to the Commission's Leniency Program?  Based on

22   the particular facts of this case, I conclude it may not and

23   **DENY** plaintiff's motion to compel.

24        In 2002, attorneys representing defendant Flexsys N.V.

25   met with officials of the European Commission.  Flexsys N.V.

26   disclosed the existence of anti-competitive practices in the

27   rubber chemicals industry and solicited immunity from fines

28   for Flexsys N.V. pursuant to the Commission's Leniency

                                    1

Program.[1]  Decision of the European Commission dated December
21, 2005 attached as Exhibit D to the Forman Supplemental
Declaration filed February 12, 2007 (hereafter "Decision")
¶ 46.  Over the next three years the Commission, through its
Directorate-General for Competition ("DG-Competition") carried
out an extensive investigation during which there were
communications between the Commission and its counsel and
Flexsys N.V. and its counsel.  At the conclusion of its
investigation, the Commission issued its 106-page Decision
containing highly detailed findings of fact based on specific
evidence, including evidence that was submitted by Flexsys
N.V.

     In 2006, Plaintiff Korea Kumho Petrochemical Co., Ltd.
("Kumho"), filed this complaint against defendant Flexsys
America L.P. ("Flexsys"), its affiliate Flexsys N.V., and
others, alleging that defendants engaged in unlawful conduct
to exclude Kumho from the U.S. rubber chemicals market.  Kumho
then served Flexsys, but not Flexsys N.V., with requests for
documents related to investigations of suspected antitrust
violations in the rubber chemicals industry that were
conducted by the governments of the United States, Canada, and
the European Union.

     Flexsys objected to the requests on various grounds.
Over the ensuing months, the parties resolved many of the
objections.  Flexsys produced documents with respect to the

_____

     [1]  "The European Commission's 'Leniency Program' allows
'cartel participants [to] confess their wrongdoing' in return
for prosecutorial leniency."  Intel Corp. v. Advanced Micro
Devices, Inc., 542 U.S. 241, 266 n.18 (2004).

1   U.S. and Canadian investigations and produced all the business

2   documents that had been produced in Europe.  Flexsys refuses

3   to produce the communications between the Commission and

4   Flexsys N.V. which were generated under the Leniency Program

5   (hereafter collectively referred to as the EC documents).

6   Flexsys objects on the principal ground that production would

7   conflict with the policies of a foreign sovereign, which is

8   entitled to comity.  Flexsys has submitted a letter from the

9   Commission opposing discovery of the EC documents.[2]

10      The Federal Rules of Civil Procedure authorize party-

11  initiated discovery of any evidence that is relevant to any

12  party's claims or defenses.  Fed. R. Civ. P. 26(b)(1).

13  However, Rule 26 grants the court discretion to limit

14  discovery on several grounds, including international comity.

15  See Societe Nationale Industrielle Aeropostiale v. U.S. Dist.

16  _____

17      [2]   The Commission feels so strongly about this issue
    that it has filed briefs amicus curiae in two other cases in
18  which similar issues have arisen.  In In re Methionine
    Antitrust Litig., MDL No. 00-1311 CRB (N.D. Cal. June 17,
19  2002), Judge Breyer affirmed a special master's report which
    denied plaintiff's motion to compel.  The special master, a
20  retired former judge of this court, had conducted a comity
    analysis and concluded that "the balance tips strongly in favor
21  of" respecting the Commission's interests, largely because, as
    here, the documents at issue were not seen as that important
22  and alternative sources for the information existed.  Order on
    Plaintiff's Motion to Compel at 13.  In In re Vitamins
23  Antitrust Litig., 2002 U.S. Dist. LEXIS 26490 (D.D.C. Jan. 23,
    2002) and 25815 (Dec. 18, 2002), the court adopted a special
24  master's report which recommended that the documents be
    produced after the master conducted a comity analysis.  While
25  the master's report was sealed, in balancing the comity factors
    the court concluded that the information there sought did not
26  all originate outside the U.S. and could not be obtained from
    other sources. The court also doubted that production of the
27  documents would undermine important interests of the Commission
    based in part on expert testimony not offered in this case.
28  2002 U.S. Dist. LEXIS 26490 at *127-28.

1    Court for the S. Dist. of Iowa, 482 U.S. 522, 544 (1987).

2    American courts, in supervising pretrial proceedings, should

3    exercise special vigilance to demonstrate due respect for any

4    sovereign interest expressed by a foreign state.

5    Aeropostiale, 482 U.S. at 546.

6        "Comity, in the legal sense, is neither a matter of

7    absolute obligation, on the one hand, nor of mere courtesy and

8    good will, upon the other." Aeropostiale, 482 U.S. at 544

9    (citing Hilton v. Guyot, 159 U.S. 113, 163-64 (1895)).  It is

10   the recognition which one nation allows within its territory

11   to the legislative, executive, or judicial acts of another

12   nation, having due regard both to international duty and

13   convenience, and to the rights of its own citizens or of other

14   persons who are under the protection of its laws." Id.

15       As a threshold matter, Kumho doubts the position the

16   Commission has taken in this case is even entitled to comity.

17   It first questions whether the European Union is a sovereign

18   entity.  As the Supreme Court recognized in Intel v. Advanced

19   Micro Devices, Inc., 542 U.S. 241 (2004), "'The European

20   Commission is the executive and administrative organ of the

21   European communities'... The Commission exercises

22   responsibility over the wide range of subject areas covered by

23   the European Union Treaty; those areas include the treaty

24   provisions, and regulations thereunder, governing

25   competition." Id. at 250.  While the Supreme Court did not

26   expressly hold that the European Union is a sovereign who

27   should be accorded comity, the analysis it conducted in

28   concluding that the European Commission is a tribunal within

4

1   the meaning of 28 U.S.C. §1782(a) is in significant part a

2   comity analysis.  Id. at 261-62.  Nothing in the Supreme

3   Court's opinion suggests that the European Union should not be

4   treated as a sovereign.  Kumho has cited no authority in

5   support of its position and the only authority of which I am

6   aware accords the European Union comity.[3]

7       Kumho next questions whether the letter directed to the

8   court and signed by Kirtikumar Mehta, Director of DG-

9   Competition, accurately states the views of the Commission.

10  Once again, the Supreme Court has recognized that "DG-

11  Competition, operating under the Commission's aegis, is the

12  European Union's primary antitrust law enforcer."  Intel Corp.

13  v. Advanced Microdevices, Inc., 524 U.S. at 250.  Far from

14  being a mere "bureaucrat," as Kumho has characterized him, Mr.

15  Mehta seems analogous to the head of the Justice Department's

16  Antitrust Division.  His letter states that it "reflects the

17  views of D.G. Competition" and that the Commission will seek

18  leave to act as amicus curiae if desired.  Moreover, he has

19  attached to his letter a position paper filed by the

20  Commission with the United States Antitrust Modernization

21  Commission which amplifies the Commission's views.  Under

22  these circumstances I conclude that the views expressed in Mr.

23  Mehta's letter and its attachment are the views of the

24  Commission.

25

26      [3]  See Empagaran S.A. v. Hoffman-LaRoche Ltd., 453 F.
    Supp. 2d 1 (D.D.C. 2006).  See also Methionine, MDL No. 00-1311
27  CRB (N.D. Cal. June 7, 2002), and Vitamins, 2002 U.S. Dist.
    LEXIS 25815 at *33 ("the concerns of the EC should be addressed
28  out of respect for the EC as a foreign Sovereign").

1    In undertaking a comity analysis, a court must balance

2    five competing factors:

3         "(1) the importance to the ... litigation of the
          documents or other information requested; (2) the
4         degree of specificity of the request; (3) whether
          the information originated in the United States; (4)
5         the availability of alternative means of securing
          the information; and (5) the extent to which
6         noncompliance with the request would undermine
          important interests of the United States, or
7         compliance with the request would undermine
          important interests of the state where the
8         information is located."

9    Aeropostiale, 482 U.S. at 544 (citing Restatement (Third) of

10   the Foreign Relations Law of the U.S. § 442 (1987)).  Applying

11   this analysis, I conclude that principles of comity outweigh

12   the need for production of the EC documents.

13        First, courts are less inclined to ignore a foreign

14   state's concerns where the outcome of litigation "does not

15   stand or fall on the present discovery order," or where the

16   evidence sought is cumulative of existing evidence.  See

17   Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468,

18   1475 (9th Cir. 1992).  Here, plaintiff has failed to persuade

19   me of the importance of the EC documents.  Plaintiff asserts

20   that they are "highly relevant" to its claim, in that Flexsys

21   N.V. admitted its participation in one or more conspiracies to

22   restrain trade. (See Memorandum in Support of Motion to Compel

23   at 5).  However, the Commission was investigating whether

24   Flexsys N.V. had entered into a conspiracy to restrain trade

25   and monopolize in Europe.  It is not clear how relevant or

26   important any admissions Flexsys N.V. made while seeking

27   leniency from the Commission would be in this case in which

28   plaintiff claims that Flexsys engaged in a conspiracy to

1   exclude plaintiff from the U.S. rubber chemicals market.  It

2   is even less clear for documents generated by the Commission.

3        Flexsys has already produced all the business records

4   Flexsys N.V. turned over to the Commission.  It also produced

5   documents relating to the investigation by the U.S. Department

6   of Justice ("DOJ"), including all documents relating to any

7   actual or proposed amnesty, agreement, or plea.  Thus, I fail

8   to see the importance or relevance of the EC documents to this

9   litigation in which plaintiff claims that Flexsys sought to

10  exclude it from the U.S. market, not the European market, and

11  plaintiff already has the documents relating to the DOJ

12  investigation of a conspiracy in the U.S.[4]  This factor weighs

13  against production.

14       As to the specificity of the request, generalized

15  searches for information whose disclosure is prohibited under

16  foreign law are discouraged.  Richmark Corp., 959 F.2d at

17  1475.  Flexsys has not objected on these grounds, and the

18  request for the EC documents seems sufficiently specific.

19  This factor favors production.

20       As to the third factor, the EC documents did not

21  originate in the United States.  According to Flexsys, they

22  were prepared by European counsel for Flexsys N.V. and by

23  officials of the Commission, which sits in Belgium.  In its

24  letter the Commission states that the documents requested by

25  _____

26       [4]   In an abundance of caution, I reviewed the EC
    documents *in camera*.  My review confirmed their lack of
27  importance to this litigation.  Specifically, I found no
    reference to Kumho or to any conduct aimed at excluding anyone
28  from the U.S. market.

1    Kumho include confidential Commission documents that were

2    provided to the parties to allow them to exercise their rights

3    of defense in the Commission's proceedings.  (<u>See</u> Mehta Letter

4    dated April 17, 2007, at 2).  The fact that Flexsys has access

5    to these documents in the U.S. is not dispositive.  The

6    documents were created, transmitted, and used only in Europe

7    and in conjunction with the European enforcement proceedings.

8    This factor weighs against production.

9         The fourth factor in the comity analysis is whether the

10   information sought can be obtained through alternative means.

11   <u>See</u> <u>Aeropostiale</u>, 482 U.S. at 544.  If the information sought

12   can easily be obtained elsewhere, there is little or no reason

13   to offend foreign law.  Here, Flexsys has produced the

14   documents exchanged with the DOJ in the course of its

15   investigation, including any amnesty or plea agreement.  This

16   information is likely to be more relevant to Kumho that the EC

17   documents, since Kumho asserts that Flexsys conspired to keep

18   it out of the U.S. market and any admission made to DOJ likely

19   involves an admission of wrongdoing within the U.S.

20        In addition, Kumho admits that the Commission issued a

21   lengthy Decision detailing the entire alleged price-fixing

22   conspiracy "communication-by-communication"; an opinion that,

23   according to Kumho, "recites the entire file which was

24   provided to Flexsys"; an opinion to which Kumho has access and

25   has submitted to this Court. (Memorandum in Support of Motion

26   to Compel at 8-9).  Since Kumho's request is, in large part,

27   cumulative of information it already has, I find that the

28   available alternative means of obtaining the information Kumho

1    needs weighs against production.[5]

2        Finally, a court must determine the extent to which

3    noncompliance with the request would undermine important

4    interests of the United States, or compliance with the request

5    would undermine important interests of the state where the

6    information is located.  <u>Aeropostiale</u>, 482 U.S. at 544.  This

7    requires a balancing of comity with the underlying policies of

8    the Federal Rules of Civil Procedure.

9        The Commission states that given the crucial

10   investigative and evidentiary value of corporate statements

11   and voluntary submissions, the protection of these documents

12   is "indispensable to ensure the viability and efficacy of the

13   Leniency Programme," which the Commission has described as the

14   E.U.'s most effective tool in combating illegal cartels.  (<u>See</u>

15   Mehta Letter dated April 17, 2007, at 2).  The Commission also

16   states that "any response to a discovery request covering [the

17   information sought by Kumho] would conflict with Flexsys'

18   obligations under E.C. law."  <u>Id.</u>  Although this investigation

19   is completed, the Commission argues that production of the EC

20   documents would undermine its ability to initiate and

21   prosecute future investigations by creating disincentives to

22   cooperate with the Commission and would prejudice future

23   investigations.

24       Taken as a whole, the Commission's letter is a strong

25   objection to the production of the statements sought by Kumho,

26

27       [5]   Disavowal by Flexsys N.V. in this litigation of the
     admissions it made in Europe might alter the analysis of this
28   factor.

and raises some concerns that discovery of the EC documents
could impact U.S. - E.U. cooperation in the enforcement of the
antitrust laws.  It seems that any marginal benefit that the
plaintiff would gain from disclosure is outweighed by the
impact that disclosure  will have on the Commission's
interests in the effective enforcement of its competition laws
and its cooperation with the U.S. to enforce those laws
internationally, especially considering that the other factors
substantially disfavor production.

     In this case, a foreign entity has taken a clear position
and articulated reasons why it believes production of the
requested documents would harm its interests.  Comity is a
sensitive balance, but having balanced the conflicting
interests of comity and discovery, I find that in this case
the principles of comity outweigh the policies underlying
discovery.  It is therefore **ORDERED** that the Motion to Compel
is **DENIED.**

Dated: May 9, 2007

_____
        Bernard Zimmerman
    United States Magistrate Judge


G:\BZALL\-REFS\RUBBER CHEMICALS\DenyMotCompelBZ3.wpd