IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOREA KUMHO PETROCHEMICAL, | No. C07-01057 MJJ |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| FLEXSYS AMERICA LP, | |
| Defendant. | |

## INTRODUCTION

Before the Court is Defendants' Motion To Dismiss With Prejudice Plaintiff's Revised First Amended Complaint. (Docket No. 3.)

For the following reasons, the Court **GRANTS** Defendants' Motion and **DISMISSES WITH LEAVE TO AMEND** Plaintiff's Revised First Amended Complaint ("RFAC") in its entirety.

## FACTUAL BACKGROUND

Plaintiff Korea Kumho Petrochemical Company ("KKPC" or "Plaintiff") is a corporation organized and existing under the laws of the Republic of Korea, with its prinicipal place of business in Seoul. (RFAC ¶ 2.) Plaintiff manufactures and sells chemicals, including 6PPD, a rubber chemical that Plaintiff makes at is Yeosu City, South Korea plant. (RFAC ¶¶ 2, 14-15, 17.) In this litigation, Plaintiff alleges that Defendants Flexsys America L.P., Flexsys N.V., Akzo Nobel Chemical Int'l B.V., and Akzo Nobel Chemicals, Inc. (collectively "Defendants") conspired together

1  to restrain trade, foreclose markets, allocate customers, reduce supply, and monopolize trade in the
2  United States market for 6PPD.

3  Plaintiff originally filed its Complaint in this action on April 26, 2006 in the Central District
4  of California.  On July 12, 2006, the Central District of California transferred the case to the
5  Northern District of Ohio.  Plaintiff filed a First Amended Complaint on August 8, 2006, and a
6  Revised First Amended Complaint (the current operative pleading) on October 16, 2006.  On
7  February 16, 2007, the Judicial Panel on Multidistrict Litigation ("JPML") transferred the litigation
8  to this Court as part of ongoing MDL proceedings.

9  Defendants now bring a motion to dismiss each of the six causes of action in the RFAC: (1)
10 conspiracy to restrain trade under Section 1 of the Sherman Act; (2) conspiracy to monopolize under
11 Section 2 of the Sherman Act, (3) attempted monopolization under Section 2 of the Sherman Act, (4)
12 violation of the Cartwright Act (Cal. Bus. & Prof. Code §§ 16720 et seq.), (5) unfair business
13 practices (Cal. Bus. & Prof. Code § 17200), and (6) intentional interference with prospective
14 economic advantage.  Defendants raise facial attacks on subject matter jurisdiction under Rule
15 12(b)(1), and also challenge the legal sufficiency of Plaintiff's claims under Rule 12(b)(6).

**LEGAL STANDARD**

17 **A.   Rule 12(b)(1)**

18 Rule 12(b)(1) authorizes a party to move to dismiss a claim for lack of subject matter
19 jurisdiction.  Federal courts are courts of limited jurisdiction; thus, the Court presumes lack of
20 jurisdiction, and the party seeking to invoke the court's jurisdiction bears the burden of proving that
21 subject matter jurisdiction exists.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377
22 (1994).  A party challenging the court's jurisdiction under Rule 12(b)(1) may do so by raising either
23 a facial attack or a factual attack.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

24 A facial attack is one where "the challenger asserts that the allegations contained in a
25 complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v.*
26 *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In evaluating a facial attack to jurisdiction, the Court
27 must accept the factual allegations in plaintiff's complaint as true.  *See Miranda v. Reno*, 238 F.3d
28 1156, 1157 n. 1 (9th Cir. 2001).  For a factual attack, in contrast, the Court may consider extrinsic

1 evidence. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987). Further, the court does
2 not have to assume the truthfulness of the allegations, and may resolve any factual disputes. *See*
3 *White*, 227 F.3d at 1242. Thus, "[o]nce the moving party has converted the motion to dismiss into a
4 factual motion by presenting affidavits or evidence properly before the court, the party opposing the
5 motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing
6 subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir.
7 2003).

8 In the Ninth Circuit, "[j]urisdictional dismissals in cases premised on federal-question
9 jurisdiction are exceptional, and must satisfy the requirements specific in *Bell v. Hood*, 327 U.S. 678
10 [] (1946)." *Sun Valley Gas., Inc. v. Ernst Enters.*, 711 F.2d 138, 140 (9th Cir. 1983); *see Safe Air for*
11 *Everyone*, 373 F.3d at 1039. The *Bell* standard provides that jurisdictional dismissals are warranted
12 "where the alleged claim under the [C]onstitution or federal statute clearly appears to be immaterial
13 and made solely for the purpose of obtaining federal jurisdiction or where such a claim is wholly
14 insubstantial and frivolous." 327 U.S. at 682-83. Additionally, the Ninth Circuit has admonished
15 that a "[j]urisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional
16 issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the
17 resolution of factual issues going to the merits' of an action." *Sun Valley*, 711 F.2d at 139. The
18 jurisdictional issue and the substantive issues are intertwined where "a statute provides the basis for
19 both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for
20 relief." *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Sun Valley*, 711 F.2d at 139).

21 **B.     Rule 12(b)(6)**

22 A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal
23 sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because the focus of a
24 Rule 12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the
25 Court ordinarily limits its review to the face of the complaint. *See Van Buskirk v. Cable News*
26 *Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). In considering a Rule 12(b)(6) motion, the Court
27 accepts the plaintiff's material allegations in the complaint as true and construes them in the light
28 most favorable to the plaintiff. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

3

1 Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable legal theory or
2 failed to allege sufficient facts under a cognizable legal theory. *See SmileCare Dental Group v.*
3 *Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996); *Balisteri v. Pacifica Police Dep't*,
4 901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th
5 Cir. 1984). In pleading sufficient facts, however, a plaintiff must suggest his or her right to relief is
6 more than merely conceivable, but plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 127
7 S.Ct. 1955, 1974 (2007).

**ANALYSIS**

**A.     Plaintiff's Sherman Act Claims Do Not Satisfy The Antitrust Injury Requirement.**

10 The Court first examines whether Plaintiff's Sherman Act claims satisfy the antitrust injury
11 requirement. After a careful review of Plaintiff's allegations, the Court concludes that Plaintiff has
12 not adequately alleged that it suffered antitrust injury.[1]

13 In order to recover under the Sherman Act, a plaintiff is required to establish causal antitrust
14 injury. To assert antitrust injury, a plaintiff "must show an injury to them[selves] resulting from the
15 illegal conduct." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see*
16 *also American Ad Mgmt, Inc. v. Genreal Tel. Co. of Cal.*, 190 F.3d 1051, 1056 (9th Cir. 1999)
17 (plaintiff must "allege some credible injury caused by the unlawful conduct"); *Eichman v. Fotomat*
18 *Corp.*, 880 F.2d 149, 163 (9th Cir. 1989) (plaintiff must establish "injury to himself as a result of the
19 alleged anti-trust violation").

**1.     Plaintiff Does Not Allege Facts Permitting It To Assert Antitrust Claims On Behalf Of The KMI Joint Venture.**

22 As an initial matter, Defendants contend that Plaintiff has not alleged facts that would permit
23 it to assert antitrust claims on behalf of the Kumho-Monsanto, Inc. ("KMI") joint venture. Plaintiff

---

[1] Contrary to Plaintiff's contention, it is appropriate to vet a plaintiff's ability to establish antitrust injury at the pleading stage, given that a plaintiff's ability to establish antitrust injury depends less on the plaintiffs' proof than on its underlying theory of injury, and antitrust injury is necessary, but not sufficient, for antitrust standing. *Cf., e.g., George Haug Co. v. Rolls Royce Motor Cars*, 148 F.3d 136, 139-40 (2d Cir. 1998) (affirming dismissal of antitrust complaint for failure to adequately plead antitrust injury); *Schuylkill Energy Resources v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 413-14 (3d Cir. 1997) (same); *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 766-67 (2d Cir. 1995) (same). In antitrust actions brought in this circuit, "the facts demonstrating standing must be clearly alleged in the complaint." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

4

did not respond to this point in its opposition papers, but conceded at oral argument that it is not asserting claims on KMI's behalf. Accordingly, when analyzing whether Plaintiff has adequately alleged antitrust injury, this Court must read the RFAC from the perspective that Plaintiff can only assert claims on behalf of itself, not on behalf of the KMI joint venture.[2]

### 2. Plaintiff Does Not Allege Facts That, If True, Would Establish That It Suffered Antitrust Injury.

Read through this lens, Plaintiff's allegations are insufficient to establish that it (i.e., KKPC) suffered antitrust injury. The allegations of anti-competitive behavior specifically directed at KKPC, primarily found at paragraph 18 of the RFAC, are conclusory in nature. In paragraph 18, Plaintiff contends that Defendants:

- "conspir[ed] to foreclose KKPC from the 6PPD market";
- "sought to impede KKPC's ability to compete in the market for 6PPD";
- "targeted KKPC for adverse and predatory treatment",
- "agreed to refuse to deal with KKPC"
- "sought to impede KKPC's entry into the U.S. 6PPD market", and
- "sought. . . to constrain [Plaintiff's] growth by a variety of methods, including exerting control over the essential resource of 4-ADPA [and] intimidating KKPC from entering into the United States 6PPD market."

(RFAC ¶ 18.) Similar conclusory allegations, with no additional supporting factual allegations, are repeated at paragraphs 27, 33, 44, 51, 58 of the RFAC.[3]

---

[2] The RFAC identifies KMI as a "50-50 owned joint venture in South Korea" originally formed by Plaintiff and Monsanto. (RFAC ¶ 19.) Plaintiff does not have a legal right to bring antitrust claims on KMI's behalf sonly by virtue of being a shareholder. *See Slonger v. A & M Records, Inc.*, 718 F.2d 298, 299 (9th Cir. 1983); *Florida Seed Co., Inc. v. Monsanto Co.*, 105 F.3d 1372, 1376 (11th Cir. 1997). The only other allegation in the RFAC regarding Plaintiff's legal relationship to KMI is a parenthetical comment that Plaintiff is a "successor to KMI." (RFAC ¶ 19.) But a general allegation that Plaintiff is a "successor" to KMI, without more, does not establish that Plaintiff may assert antitrust claims that once belonged to KMI. An express assignment, which Plaintiff has not alleged, is required for the transfer of U.S. antitrust claims. *See Sullivan v. National Football League*, 34 Fl3d. 1091, 1106 (1st Cir. 1994); *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 437-440 (3d. Cir. 1993); *Arden Architectural Specialities, Inc. v. Washington Mills Electro Minerals Corp.*, 1998 U.S. Dist. LEXIS 23084 (W.D.N.Y. July 7, 1998). .]").

[3] It is not sufficient to allege, in conclusory fashion, the ultimate legal conclusion that Plaintiff "has suffered and will continue to suffer antitrust injury" (RFAC ¶¶ 46, 53, 63) without accompanying factual allegations that make clear the antitrust injury theory that Plaintiffs seek to advance. *See, e.g., Carrell v. The Shubert Org., Inc.*, 104 F. Supp. 2d 236, 266

5

1    None of these allegations speak to the existence or nature of any antitrust injury actually
2 suffered by Plaintiff.  The allegations identify the purpose and goals of the alleged conspiracy, and
3 indicate that Plaintiff was a target of the conspiracy.  Absent, however, is any adequate allegation of
4 facts that would establish that Plaintiff suffered some sort of cognizable injury (e.g., decreased sales,
5 profits or market share resulting from conduct that violates the Sherman Act).  To establish antitrust
6 injury, it is not sufficient to allege that the conspirators merely "targeted" Plaintiff or otherwise
7 intended to harm or schemed against it.  *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
8 509 U.S. 209, 225 (1993); *Smilecare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780,
9 783 (9th Cir. 1996).

10   The only detailed factual allegations in the RFAC regarding the conspiracy's anti-
11 competitive conduct describe activity directed not at Plaintiff, but at the KMI joint venture.  (RFAC
12 ¶¶ 33-36.)  These detailed allegations do not identify how KKPC itself suffered any antitrust injury
13 from the conspirator's actions directed at the KMI joint venture.  The allegations do not even specify
14 a cognizable antitrust injury suffered by the KMI joint venture.  To the contrary, the RFAC indicates
15 that the various threats and demands directed at KMI were ineffectual such that KMI "turned to
16 alternative supplies of 4-ADPA" and "continued to competitively produce 6PPD using this
17 alternative source of supply."  (RFAC ¶ 36.)[4]

18   The only other allegations of injury suffered by KKPC concern patent-related
19 communications directed at Plaintiff's customers, found at paragraphs 37-40 of the RFAC.  But
20 these alleged pre-litigation communications are protected conduct under the *Noerr-Pennington*
21 immunity doctrine, and therefore are insufficient to create antitrust liability on their own.  *See Sosa*
22 *v. DirecTV, Inc.*, 437 F.3d 923, 937 (9th Cir. 2006); *Globetrotter Software, Inc. v. Elan Computer*
23 *Group, Inc.*, 362 F.3d 1367, 1376 (Fed. Cir. 2004).  Plaintiff concedes that it is not asserting these
24 litigation-related communications as an independent basis for antitrust liability, and is not asserting

---

26 (S.D.N.Y. 2000); *Volmar Distrib., Inc. v. The New York Post Co., Inc.*, 825 F. Supp. 1153, 1160 (S.D.N.Y. 1993).

27   [4] At oral argument, Plaintiff cited *United Phosphorus, Ltd. v. Angus Chemical Co.*, 1994 WL 577246
28 (N.D.Ill. Oct. 18, 1994) in support of its contention that its generalized allegations of antitrust injury are sufficient to survive a motion to dismiss.  The Court finds *United Phosphorus* to be distinguishable.  In *United Phosphorus*, unlike here, the plaintiff alleged specific lost business and financial losses which constituted antitrust injury.  *Id.* at 12.

6

that the "sham" exception to *Noerr-Pennington* immunity applies. In fact, Plaintiff intentionally deleted such "sham" allegations originally found in its original complaint. (April 26, 2006 Complaint at ¶¶ 47-51, 70, 72.)[5]

Because Plaintiff has not adequately allege antitrust injury in connection with any of its Sherman Act claims, the Court will dismiss Plaintiff's first, second, and third causes of action.[6]

]B.     **Plaintiff's State Law Claims Must Be Dismissed.**

    1.     **Plaintiff's Cartwright Act Claim Must Be Dismissed.**

Plaintiff's failure to plead a cognizable antitrust injury requires dismissal of the fourth cause of action under California's Cartwright Act as well. *See McGlinchy v. Shell Chem Co.*, 845 F.2d 802, 811 n.4 (9th Cir. 1988) ("We have recognized that Cartwright Act claims raise basically the same issues as do Sherman Act claims. California state courts follow federal cases in deciding claims under the Cartwright Act.") (citations omitted). Plaintiff advances no argument as to how the Cartwright Act claim can survive in the absence of cognizable antitrust injury.

    2.     **Plaintiff's Section 17200 Claim Must Be Dismissed.**

Plaintiff's failure to plead a cognizable antitrust injury also requires dismissal of Plaintiff's Section 17200 claim as well. Plaintiff has identified no alleged unlawfulness beyond Defendants' alleged antitrust violations. Plaintiff has also not satisfied the "injury in fact" requirement under Section 17200.

---

[5] At oral argument, Plaintiff asserted that the patent-related conduct it alleges is analogous to the activity considered outside *Noerr-Pennington* immunity in *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240 (9th Cir. 1982). The Court finds this argument unconvincing. The *Clipper Exxpress* decision preceded the Supreme Court's decision in *Professional Real Estate Investors, Inc. V. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) ("*PREI*"), which requires Plaintiff to meet the "sham" exception to *Noerr-Pennington* immunity to use patent-related communications such as those alleged her as a basis for antitrust injury.

[6] Because Plaintiff has failed to allege antitrust injury, Plaintiff's Sherman Act allegations also fail to satisfy the FTAIA. The Court disagrees with Plaintiff's contention that the FTAIA does not apply to its allegations. Although the FTAIA excludes import trade and import commerce from its limitations on subject matter jurisdiction, the trade and commerce that is scrutinized for purposes of this analysis is the conduct ***of the defendant***. "The dispositive inquiry is whether the conduct of defendants, not plaitniffs, involves 'import trade and commerce." *Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 303 (3d Cir. 2002); *see also Carpet Group Int'l v. Oriental Rug Imp. Ass'n*, 227 F.3d 62, 70 (3d Cir. 2000). Here, the relevant alleged conduct by the defendants reflects no involvement in import trade or commerce – rather, it simply reflects restrains on foreign trade. Plaintiff's allegations, at best, attempt to establish that Defendants' conduct had some effect ***on Plaintiff's*** ability to import 6PPD into the United States. This is not enough to categorize defendant's conduct as "involvement" in import trade or commerce to remove it ambit of the FTAIA. *Cf. Carpet Group*, 227 F.3d at 72; *Turicentro*, 303 F.3d at 304.

### 3. Plaintiff's Tortious Interference With Prospective Economic Advantage Claim Must Be Dismissed.

Plaintiff's failure to plead a cognizable antitrust injury require dismissal of Plaintiff's tortious interference claim as well. A required element of the claim is proof that wrongful conduct caused injury to the plaintiff. *See Della Penna v. Toyota Motor Sales, U.S.A.*, 11 Cal. 4th 376, 392-93 (1995).

### C. Leave To Amend Is Appropriate.

Although the Court finds that Plaintiff's RFAC does not contain any allegations that adequately state a cognizable federal or state claim, the Court also finds that granting Plaintiff leave to amend is appropriate. Plaintiff represents that it has adduced additional facts from discovery in this matter that it can plead in support of its allegations. Although Plaintiff's allegations are presently too conclusory and general to satisfy antitrust pleading requirements, the Court is unable to conclude that further amendment would be futile. Moreover, because this litigation is still in its early stages, there is no real prejudice to Defendants by permitting Plaintiffs an opportunity to amend their complaint to attempt to state a cognizable claim.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion and **DISMISSES WITH LEAVE TO AMEND** Plaintiff's Revised First Amended Complaint in its entirety. Plaintiff shall file a Second Amended Complaint, if any, within twenty (20) days of entry of this order.

**IT IS SO ORDERED.**

Dated: 8/4/2007

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE