IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOREA KUMHO PETROCHEMICAL, | No. C07-01057 MJJ |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| FLEXSYS AMERICA LP, | |
| Defendant. | |

**INTRODUCTION**

Before the Court is Defendants' Motion To Dismiss With Prejudice Plaintiff's Second Amended Complaint. (Docket No. 66.)

For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion.

**FACTUAL BACKGROUND**

Plaintiff Korea Kumho Petrochemical Company ("KKPC" or "Plaintiff") is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business in Seoul. (SAC ¶ 2.) Plaintiff manufactures and sells chemicals, including 6PPD, a rubber chemical that Plaintiff makes at is Yeosu City, South Korea plant. (SAC ¶¶ 2, 18.) In this litigation, Plaintiff alleges that Defendants Flexsys America L.P., Flexsys N.V., Akzo Nobel Chemical Int'l B.V., and Akzo Nobel Chemicals, Inc. (collectively "Defendants") conspired together to restrain trade, foreclose markets, allocate customers, reduce supply, and monopolize trade in the

United States market for 6PPD.

Plaintiff originally filed its Complaint in this action on April 26, 2006 in the Central District of California. On July 12, 2006, the Central District of California transferred the case to the Northern District of Ohio. Plaintiff filed a First Amended Complaint on August 8, 2006, and a Revised First Amended Complaint (the current operative pleading) on October 16, 2006. On February 16, 2007, the Judicial Panel on Multidistrict Litigation ("JPML") transferred the litigation to this Court as part of ongoing MDL proceedings.

On August 13, 2007, this Court issued an order dismissing Plaintiff's Revised First Amended Complaint ("RFAC") in its entirety, with leave to amend. (Docket No. 61.) The Court found that Plaintiff had not adequately alleged in the First Amended Complaint that it suffered antitrust injury, and further found that Plaintiff had also failed to adequately plead its state law claims.

On September 12, 2007, Plaintiff filed a Second Amended Complaint ("SAC"). Defendants now bring a second motion to dismiss, seeking dismissal of each of the six causes of action in the SAC: (1) conspiracy to restrain trade under Section 1 of the Sherman Act; (2) conspiracy to monopolize under Section 2 of the Sherman Act, (3) attempted monopolization under Section 2 of the Sherman Act, (4) violation of the Cartwright Act (Cal. Bus. & Prof. Code §§ 16720 et seq.), (5) unfair business practices (Cal. Bus. & Prof. Code § 17200), and (6) intentional interference with prospective economic advantage. Defendants raise attacks on subject matter jurisdiction under Rule 12(b)(1), and also challenge the legal sufficiency of Plaintiff's claims under Rule 12(b)(6).

**LEGAL STANDARD**

**A.     Rule 12(b)(1)**

Rule 12(b)(1) authorizes a party to move to dismiss a claim for lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction; thus, the Court presumes lack of jurisdiction, and the party seeking to invoke the court's jurisdiction bears the burden of proving that subject matter jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). A party challenging the court's jurisdiction under Rule 12(b)(1) may do so by raising either a facial attack or a factual attack. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

A facial attack is one where "the challenger asserts that the allegations contained in a

2

complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In evaluating a facial attack to jurisdiction, the Court must accept the factual allegations in plaintiff's complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n. 1 (9th Cir. 2001). For a factual attack, in contrast, the Court may consider extrinsic evidence. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987). Further, the court does not have to assume the truthfulness of the allegations, and may resolve any factual disputes. *See White*, 227 F.3d at 1242. Thus, "[o]nce the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or evidence properly before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

In the Ninth Circuit, "[j]urisdictional dismissals in cases premised on federal-question jurisdiction are exceptional, and must satisfy the requirements specific in *Bell v. Hood*, 327 U.S. 678 [] (1946)." *Sun Valley Gas., Inc. v. Ernst Enters.*, 711 F.2d 138, 140 (9th Cir. 1983); *see Safe Air for Everyone*, 373 F.3d at 1039. The *Bell* standard provides that jurisdictional dismissals are warranted "where the alleged claim under the [C]onstitution or federal statute clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such a claim is wholly insubstantial and frivolous." 327 U.S. at 682-83. Additionally, the Ninth Circuit has admonished that a "[j]urisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." *Sun Valley*, 711 F.2d at 139. The jurisdictional issue and the substantive issues are intertwined where "a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Sun Valley*, 711 F.2d at 139).

**B.    Rule 12(b)(6)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because the focus of a Rule 12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the

3

Court ordinarily limits its review to the face of the complaint. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). In considering a Rule 12(b)(6) motion, the Court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable legal theory or failed to allege sufficient facts under a cognizable legal theory. *See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996); *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In pleading sufficient facts, however, a plaintiff must suggest his or her right to relief is more than merely conceivable, but plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).

**ANALYSIS**

Courts vet a plaintiff's ability to establish antitrust injury at the pleading stage, because a plaintiff's ability to establish antitrust injury depends less on the plaintiffs' proof than on its underlying theory of injury, and antitrust injury is necessary, but not sufficient, for antitrust standing. *See, e.g., George Haug Co. v. Rolls Royce Motor Cars*, 148 F.3d 136, 139-40 (2d Cir. 1998) (affirming dismissal of antitrust complaint for failure to adequately plead antitrust injury); *Schuylkill Energy Resources v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 413-14 (3d Cir. 1997) (same); *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 766-67 (2d Cir. 1995) (same). In antitrust actions brought in this circuit, "the facts demonstrating standing must be clearly alleged in the complaint." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

**A.    KKPC Does Not Assert Antitrust Claims On Behalf Of The KMI Joint Venture.**

It is undisputed that Plaintiff has not alleged facts that would permit it to assert antitrust claims on behalf of the Kumho-Monsanto, Inc. ("KMI") joint venture. As it did at the July 18, 2007 oral argument on Defendant's prior motion to dismiss, Plaintiff again concedes that it does not seek to assert claims on KMI's behalf. (Opp. at 9-10.) Plaintiff therefore must plead facts that establish its standing to assert antitrust claims on behalf of the KKPC entity itself.

///

**B. KKPC's Allegations Fail To Establish Standing To Assert Antitrust Injury Prior To October 2001.**

Defendants allege that Plaintiff has failed to allege a factual basis establishing standing to assert any antitrust injury prior to its acquisition of the 6PPD production facilities in the second half of 2001. The Court agrees.

Plaintiffs' allegations in the SAC, together with earlier allegations in its original Complaint and its RFAC, make clear that prior to its acquisition of the rubber chemicals production facilities in the second half of 2001, KKPC itself was not an actual 6PPD competitor and had no 6PPD production facilities. (SAC ¶¶ 20, 47; RFAC ¶ 19, Complaint ¶¶ 45-46.) All such production facilities had been transferred to the joint venture KMI in 1987 (SAC ¶ 20), and the SAC does not allege that KKPC required such facilities until October 2001 (SAC ¶ 47). The SAC alleges that only after it purchased all the assets of the former KMI joint venture did KKPC "immediately [begin] the process of selling 6PPD to customers in the United States." (SAC ¶ 48.) Plaintiff concedes that, based on its acquisition of assets from KMI, "KKPC was entitled to begin importing 6PPD to the United States *beginning* in October 2001." (Opp. at 10:8-9, emphasis added.)[1]

KKPC nonetheless asserts that it has standing to assert antitrust claims for injury that it suffered earlier than October 2001 based on its allegations that in 2000 and 2001 Defendants prolonged negotiations in bad faith with KKPC regarding dissolution of the KMI joint venture. (SAC ¶ 45.) On this point, the SAC alleges:

> Flexsys improperly tried to delay the dissolution of the Joint Venture for over a year, prolonging negotiations in bad faith for the sole and improper purpose of delaying the time when KKPC would compete directly against Flexsys in the United States, and preventing KKPC from implementing its business plans, which included the independent manufacture of 6PPD for sale in the United States.

(SAC ¶ 45.)

---

[1] Defendants assert that the facts alleged in the SAC demonstrate KKPC could not have standing earlier than December 31, 2001, the date that (according to allegations in Plaintiff's original Complaint) the actual asset transfer between KMI and KKPC occurred. (Complaint ¶¶ 45-46.) However, both the original Complaint and the SAC allege that the process of purchasing KMI's 6PPD production facilities commenced as early as October 2001. (Complaint ¶¶ 45-46, SAC ¶ 47.) At the pleading stage, during which this Court must draw all reasonable factual inferences in favor of Plaintiffs, the Court cannot rule out the possibility that KKPC will be able to prove that it was a 6PPD competitor importing 6PPD into the United States as early as October 2001, and therefore had standing to assert antitrust injury resulting from Defendants' alleged attempts to exclude them from the domestic 6PPD market as of October 2001.

Plaintiff contends that such "foot-dragging" constituted an antitrust injury suffered by KKPC because it delayed the date that KKPC could take possession and control of the KMI production facilities, and therefore delayed the date that KKPC could manufacture 6PPD for sale in the U.S. market. In essence, Plaintiff contends that it was a potential competitor that would have entered the market earlier had the defendant's alleged exclusionary conduct not kept it out.[2]

The Court finds that, as currently pleaded, KKPC's threadbare allegations regarding delay in dissolving the joint venture are insufficient to establish either standing or antitrust injury.[3] KKPC generally alleges that it had "business plans" to enter the domestic 6PPD market, but does not allege sufficient facts to establish its preparedness to do so. For standing purposes, "[a] competitor that has not yet entered the market may also suffer injury but courts require a 'potential' competitor to demonstrate both its intention to enter the market and its preparedness to do so. *Andrx Pharmaceuticals, Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 806 (D.C. Cir. 2001). Here, KKPC has not adequately alleged facts demonstrating its preparedness to enter the United States 6PPD market on an earlier time frame than it actually did.[4] *See id.* at 807.

Moreover, KKPC's allegations in connection with the dissolution of the joint venture also fall short of establishing facts demonstrating the elements of injury-in-fact, causation and antitrust injury that are a prerequisite to antitrust standing. As a threshold matter, KKPC alleges only that Flexsys "tried" to delay dissolution of the joint venture (SAC ¶ 45), but does not allege that Flexsys's foot-dragging actually slowed the speed with which the dissolution occurred. This allegation falls short of establishing an injury-in-fact. Even assuming the alleged foot-dragging by Flexsys did slow the dissolution, KKPC has also not alleged any facts suggesting such delay

---

[2] KKPC does not identify any factual allegations, other than those concerning Defendants' dilatory approach to dissolving the joint venture, that would convey standing upon KKPC to assert antitrust claims prior to October 2001. (Opp. at 10-11; February 13, 2008 Hearing Transcript at 10-12.)

[3] The alleged misconduct referenced in paragraphs 46 of the SAC, which references unsuccessful efforts in 2000 and 2001 by Defendants to solicit KKPC to join the alleged conspiracy, is not adequate to establish antitrust injury and therefore cannot confer standing.

[4] "Indicia of preparedness include adequate background and experience in the new field, sufficient financial capability to enter it, and the taking of actual and substantial affirmative steps toward entry, such as the consummation of relevant contracts and procurement of necessary facilities and equipment." *Andrx Pharmaceuticals*, 256 F.3d at 807 (quoting *Hecht v. Pro-Football, Inc.*, 570 F.2d 982, 994 (D.C. Cir. 1977)).

6

1 frustrated any pre-existing rights to re-acquire the production facilities upon dissolution of the joint
2 venture. KKPC has therefore failed to adequately allege causation and antitrust injury. From
3 KKPC's sparse allegations, it is impossible to determine whether Flexsys alleged conduct had any
4 actual effect on the timing on KKPC's entry into the domestic 6PPD market. *Cf. Andrx*
5 *Pharmaceuticals*, 256 F.3d at 807 & n.11 (failure to allege facts demonstrating preparedness to enter
6 market also meant plaintiff had failed to adequately allege injury and causation).

Although KKPC's allegations regarding dilatory conduct surrounding the dissolution of the joint venture are presently too sparse to satisfy antitrust pleading requirements, the Court finds that granting Plaintiff further leave to amend with respect to such dilatory conduct is appropriate. KKPC may be able to allege sufficient facts to demonstrate its preparedness to enter the domestic 6PPD market in 2000 and 2001. If KKPC can allege predicate facts establishing such preparedness, as well as injury-in-fact and causation, KKPC may plausibly be able to plead facts that demonstrate an injury of the type the antitrust laws were designed to prevent.[5]

## C. Plaintiff Fails To Adequately Allege Any Antitrust Injury In October 2001 Or Later Stemming From Restrictions On The Supply of 4-ADPA.

Defendants assert that the post-September 2001 allegations in the SAC regarding antitrust injury are too conclusory to specify a cognizable antitrust injury relating to the supply of 4-ADPA. The Court agrees.

In order to recover under the Sherman Act, a plaintiff is required to establish causal antitrust injury. To assert antitrust injury, a plaintiff "must show an injury to them[selves] resulting from the illegal conduct." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also American Ad Mgmt, Inc. v. Genreal Tel. Co. of Cal.*, 190 F.3d 1051, 1056 (9th Cir. 1999) (plaintiff must "allege some credible injury caused by the unlawful conduct"); *Eichman v. Fotomat*

---

[5] The Court disagrees with Defendants' contention that *Vinci v. Waste Management, Inc.*, 80 F.3d 1372 (9th Cir. 1996) categorically bars KKPC from being able to plead facts establishing standing merely because it was a shareholder in the KMI joint venture. In *Vinci*, the court found that a shareholder of a corporation had no standing to sue in his own name based on injury to the corporation, even if the shareholder alleged that the antitrust violations were intended to drive the shareholder out of the industry. *See id.* at 1375. Unlike the allegations in *Vinci*, KKPC does not appear to assert here that it suffered injury as a result of any injury inflicted upon the KMI joint venture. Instead, KKPC asserts that it suffered a more direct form of injury, insofar as Defendants' alleged attempts to slow the dissolution of the joint venture delayed KKPC's (but not KMI's) entry into the domestic 6PPD market.

*Corp.*, 880 F.2d 149, 163 (9th Cir. 1989) (plaintiff must establish "injury to himself as a result of the alleged anti-trust violation").

Here, the SAC lacks any allegations that KKPC suffered a cognizable injury proximately caused by a restriction in the supply of 4-ADPA caused by Defendants in October 2001 or later. In the SAC, Plaintiff alleges that as a result of Defendants' efforts to restrict supply of 4-ADPA to KKPC, by "refus[ing] to sell KKPC any 4-ADPA and pressur[ing] other manufacturers of 4-ADPA also not to sell 4-ADPA to KKPC, KKPC "turned to an independent producer of supply its 4-ADPA needs (Sinorgchem)." (SAC ¶ 55.) Plaintiff does not include any factual allegations showing any injury proximately caused by the shift in its source for 4-ADPA. To the contrary, Plaintiff appears to have been able to locate an alterative supply for 4-ADPA and to have continued to produce 6PPD for sale. Plaintiff has not pleaded otherwise – nor could it. In the RFAC, Plaintiff explicitly pleaded that it "continued to competitively produce 6PPD using this alternative source of supply" (RFAC ¶ 36). Because an "amended complaint may only allege other facts consistent with the challenged pleading", *see Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 297 (9th Cir. 1990), Plaintiff would clearly be unable to plead facts consistent with its allegations in the RFAC that could establish that Defendants efforts to restrict the supply of 4-ADPA to Plaintiff interrupted its ability to produce or sell 6PPD.

It is evident to the Court that it would be futile to grant further leave to amend in connection with the allegation that Defendants' efforts to restrict the supply of 4-ADPA interrupted Plaintiff's ability to produce 6PPD or otherwise proximately caused antitrust injury. The Court had previously identified this specific shortcoming when it considered Defendant's motion to dismiss the RFAC (Docket No. 61 at 6:14-17), and has already given KKPC leave to amend once to attempt to cure this deficiency. When pressed at the hearing on the instant Motion as to how any sourcing restriction proximately caused antitrust injury, Plaintiff was unable to identify any theory of injury that resulted directly from an interruption or restriction on its supply of 4-ADPA. (February 13, 2008 Hearing Transcript at 19:16-25:2.) Instead, Plaintiff was only able to link the sourcing restriction into its separate allegations that Defendants later harassed and threatened Plaintiff's customers, explaining that the sourcing restriction caused KKPC to turn to Sinorgchem for its supply of 4-ADPA, and that

Defendants then "started to harass our customers saying your can't do business with them because they are sourcing from Sinorgchem." (*Id.* at 20:21-22; *accord id.* at 22:17-20, 24:22-23.) But this is not a theory of injury predicated upon an interruption of or decrease in its supply of 4-ADPA. Instead, it is a theory of injury caused by threats made to Plaintiff's customers, for which Defendants' refusal to supply KKPC with 4-ADPA was at most a "but-for" cause. Moreover, Plaintiff's allegations in its RFAC and SAC make clear that the threats made to Plaintiff's customers regarding Plaintiff's use of Sinorgchem-produced 4-ADPA (RFAC ¶¶ 39-40, SAC ¶¶ 51, 55) were all patent-related communications that this Court has previously found constituted protected conduct under the *Noerr-Pennington* immunity doctrine. (Docket No. 61 at 6:18-7:3.) Accordingly, Plaintiff is not only unable to plead proximately-caused antitrust injury as a result of any restriction on 4-ADPA supply caused by Defendants, but is also unable, because of *Noerr-Pennington* immunity, to plead any downstream antitrust injury for which the restriction on 4-ADPA supply might be a "but-for" cause. Accordingly, the Court will dismiss this liability theory <u>without</u> leave to amend.

**D.    The FTAIA Does Not Bar Subject Matter Jurisdiction Over Plaintiff's Claims.**

Defendants argues that even assuming Plaintiff could adequately allege the existence of antitrust injury either: (1) before October 2001as a result of dilatory conduct in dissolving the KMI joint venture; or (2) in October 2001or later resulting from restrictions on the supply of 4-ADPA to KKPC, the FTAIA would bar subject matter jurisdiction over such assertions. The Court disagrees.

As a threshold matter, the Court agrees with Defendants that the FTAIA framework applies to Plaintiff's allegations. Although the FTAIA parenthetically excludes "import trade and import commerce" (15 U.S.C. § 6a) from its limitations on subject matter jurisdiction, the trade and commerce that is scrutinized for purposes of this analysis is the conduct of the defendant, not of the plaintiff. "The dispositive inquiry is whether the conduct of defendants, not plaintiffs, involves 'import trade and commerce." *Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 303 (3d Cir. 2002); *see also Carpet Group Int'l v. Oriental Rug Imp. Ass'n*, 227 F.3d 62, 70 (3d Cir. 2000). Here, the relevant alleged misconduct by the Defendants reflects no "involvement" in import trade or commerce – rather, it simply reflects dilatory conduct in dissolving a joint venture and/or restraints on foreign trade for 4-ADPA. Neither factual allegation constitutes "involvement" in

9

import trade or commerce such that it would be removed from the ambit of the FTAIA. *Cf. Carpet Group*, 227 F.3d at 72; *Turicentro*, 303 F.3d at 304. The FTAIA test must therefore be applied to Plaintiff's allegations to determine if there is subject matter jurisdiction.

However, as to the question of whether the FTAIA test is satisfied, Defendants have overstated the scope of this Court's prior ruling as to the effect of the FTAIA. Assuming Plaintiff could adequately allege the existence of antitrust injury either (1) before October 2001as a result of dilatory conduct in dissolving the KMI joint venture; or (2) in October 2001or later resulting from restrictions on the supply of 4-ADPA to KKPC, it appears to the Court that such allegations would meet the FTAIA test for subject matter jurisdiction. The FTAIA brings conduct involving trade or commerce with foreign nations back within the scope of the Sherman Act where such conduct has a "direct, substantial and reasonably foreseeable effect . . . on import trade or import commerce with foreign nations . . . ." 15 U.S.C. § 6a(1)(A). Here, where Plaintiff alleged that Defendants specifically intended their actions to interference with KKPC's ability to import 6PPD into the United States, the FTAIA jurisdictional test would be satisfied had Plaintiff adequately alleged a cognizable antitrust injury. The allegations involving dilatory conduct, and the allegations involving restrictions on the supply of 4-ADPA, both involve conduct with a "direct, substantial and reasonably foreseeable effect" on import commerce, and that effect would give rise to Plaintiff's injuries.

**E.     Plaintiffs Has Not Adequately Pleaded Its Antitrust Claims Premised Upon Post-September 2001 Communications By Defendants With Plaintiff's Customers.**

The only other allegations of injury suffered by KKPC from October 2001 onward concern communications directed at Plaintiff's customers. (SAC ¶¶ 48-54.) Defendants contend that these remaining allegations fail to establish any Sherman Act claims for three reasons. First, Defendants argue that *Noerr-Pennington* immunity shields the alleged conduct from liability. Second, Defendants contend that Plaintiffs' first and second causes of action (for conspiracy to restrain trade under Section 1 and conspiracy to monopolize under Section 2) are infirm because Plaintiff has not sufficiently alleged the threats were part of a conspiracy. Third, Defendants contend that Plaintiff's third cause of action (for attempted monopolization) must be dismissed because Plaintiff has not

10

adequately alleged that Flexsys had a dangerous probability of achieving monopoly power.

The Court will address each of these arguments in turn.

**1.    *Noerr-Pennington* Immunity Does Not Bar Plaintiff's Claims Premised Upon Defendants' Communications With Plaintiff's Customers In Their Entirety.**

Defendants contend that the *Noerr-Pennington* doctrine immunizes them from liability with respect to the customer communications alleged in the SAC. The Court disagrees. Whereas Plaintiffs' RFAC alleged solely patent-related communications that constituted protected conduct under the *Noerr-Pennington* immunity doctrine, Plaintiff's SAC alleges additional communications by Defendants to Plaintiff's customers. Accepting the facts alleged in the SAC and all reasonable inferences drawn therefrom, at least some of these communications were unrelated to enforcement of patents and instead constituted threats to cut off supplies of 6PPD to KKPC's customers and solicitations to participate in a boycott of KKPC (SAC ¶¶ 49, 50, 52, 53.) Assuming such allegations to be true (as this Court must at the pleading stage), such communications do not involve petitioning the government and do not qualify for *Noerr-Pennington* immunity.[6]

The Court rejects Defendants' argument that allegations of these non-patent communications directly contradict the averments contained in Plaintiff's earlier complaints. There is no inconsistency created by allegations that, in addition to making patent-related communications that might be subject to *Noerr-Pennington* scrutiny, Defendants made threats or solicitations unrelated to patents that fall outside such immunity. (*Compare* RFAC ¶¶ 37-40 *with* SAC ¶¶ 48-54.)

Accordingly, the Court finds that *Noerr-Pennington* immunity does not require the dismissal of Plaintiff's Sherman Act claims premised upon Defendants' communications with KKPC's customers.[7]

---

[6] Contrary to Defendants' contentions (Mot. at 18. n. 27), the allegations of non-patent communications are not merely conclusory or general allegations. The allegations in the SAC provides provide detail as to the timing and content of such communications for a specific customer, Michelin. (SAC ¶¶ 50, 52, 53.) The Court finds that these allegations as to Michelin are detailed enough to meet the *Twombly* standard.

[7] Although Plaintiff's Sherman Act claims are not defeated in their entirety by *Noerr-Pennington* immunity, some of the patent-related communications that Defendants are alleged to have engaged in with KKPC's customers may well be unactionable because of *Noerr-Pennington* immunity. The Court need not resolve this question today. To the extent it is necessary, any determination as to which communications with customers fall within the scope of such immunity will await the merits stage of the litigation.

11

///

### 2. Plaintiff's Assertion That A Broader Conspiracy Continued Into 2005 Even After Criminal Indictments, Fines, And Pleas Fail To Meet The *Twombly* Standard.

Defendants allege that Plaintiff's two conspiracy counts under the Sherman Act must be dismissed because Plaintiff has failed to properly allege that the customer threats were part of a conspiracy. In particular, Defendants contend that the SAC provides no plausible factual basis that meets the *Twombly* standard to establish a conspiracy during the relevant time frame between Flexsys and the identified co-conspirators, Bayer and Chemtura. Conspiracy is a necessary element of both a Section 1 claim and a Section 2 conspiracy to monopolize claim. *See Eichman v. Fotomat Corp.*, 880 F.2d 149, 162 (9th Cir. 1989).

The Court finds that the SAC does not meet the *Twombly* standard for establishing the existence of a conspiracy in 2005 or later, the time frame during which the alleged customer communications were made. Disregarding conclusory allegations, all of the factual allegations of conspiracy found in the SAC predate 2002 (SAC ¶¶ 28(a)-(j)), but the only factual allegations regarding threats or other communications directed at KKPC's customers concern events that took place in or after September 2005. (SAC ¶¶ 50-52). The SAC contains no factual allegations of any post-2001 parallel conduct by Bayer or Chemtura in furtherance of the conspiracy. Moreover, Plaintiff's own allegations render it implausible that a continuing conspiracy extended past 2001, given that Plaintiff has pleaded that two of the three conspirators had pleaded guilty before the alleged threats to customers, and the third (Flexsys) was "turn[ing] over evidence against" those two co-conspirators. (SAC ¶¶ 33, 35, 36.) Plaintiff's contention in its opposition brief that a "different" and "broader" conspiracy extended into 2005 and beyond is simply not found even in conclusory fashion in the SAC, let alone supported by factual allegations in the SAC that meet the *Twombly*

standard. *See Twombly*, 127 S.Ct. at 1965-66.[8]

///

///

### 3. Plaintiff Has Not Adequately Alleged That Flexsys Had Market Dominance Or A Dangerous Probability Of Achieving Monopoly Power.

Defendants argue that Plaintiff's Sherman Act claim for attempted monopolization should be dismissed because Plaintiff has failed to establish that Flexsys has sufficient market power to have a dangerous probability of achieving monopoly power. The Court agrees.

Plaintiff's allegation regarding dangerous probability reads: "Given Flexsys's dominance of the U.S. 6PPD market, there was a dangerous probability that it would by its unlawful actions achieve monopoly power in violation of Section 2 of th Sherman Act, 15 U.S.C. § 2." (SAC ¶ 78.) This allegation consists merely of "labels and conclusions, and a formulaic recitation of the elements of a cause of action" which "will not do." *Twombly*, 127 S.Ct. at 1966. Although Plaintiff need not necessarily quantify Flexsys' market share with precision, Plaintiff must assert some facts in support of its assertions of market power that suggest those assertions are plausible. Plaintiff has not done so. Indeed, Plaintiff's only concrete factual allegation regarding Flexsys' market power cuts against the conclusion that Flexsys enjoyed market power. Plaintiff alleged that "Flexsys' attempts to raise prices . . . failed because buyers sought out the lowest cost 4-ADPA and 6PPD regardless of source. Flexsys continued to face eroding prices and new competition from manufacturers based off-shore. (SAC ¶ 26.)

Moreover, Plaintiff's allegations that Flexsys' threats to U.S. 6PPD customers caused KKPC's sales to decline (SAC ¶¶ 49-50) are insufficient to establish the dangerous probability element. A drop in Plaintiff's sales does not, by itself, establish that the reduction in sales was the result of a Sherman Act antitrust violation. *See Eichman*, 880 F.2d at 1623.

### F. Plaintiff's State Law Claims.

---

[8] Plaintiff's reliance on authorities concerning the alleged withdrawal by one defendant from a continuing conspiracy (Opp. at 15:17-16:20) is misplaced. Based on the allegations found in the SAC, Plaintiff's own allegations concerning the behavior of the other two alleged co-conspirators renders it implausible that any conspiracy continued into 2005.

13

### 1. Plaintiff's Cartwright Act Claim Must Be Dismissed.

Plaintiff's failure to plead a cognizable Sherman Act claim requires dismissal of the fourth cause of action under California's Cartwright Act as well. *See McGlinchy v. Shell Chem Co.*, 845 F.2d 802, 811 n.4 (9th Cir. 1988) ("We have recognized that Cartwright Act claims raise basically the same issues as do Sherman Act claims. California state courts follow federal cases in deciding claims under the Cartwright Act.") (citations omitted). Plaintiff advances no argument as to how the Cartwright Act claim can survive in the absence of antitrust injury with respect to 4-ADPA, in the absence of sufficient allegations of conspiracy, and in the absence of sufficient allegations of market power.

### 2. Plaintiff Has Adequately Pleaded A Section 17200 Claim.

Plaintiff has adequately pleaded a Section 17200 claim premised upon unfairness. An act need not violate the antitrust laws to be actionable by a competitor as unfair, it can be actionable if it "significantly threatens or harms competition." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Unlike it in its RFAC, here Plaintiff has adequately alleged that it suffered injury-in-fact, in the form of lost business and sales, as a result of Defendant's alleged threats and attempts to organize boycotts directed at its customers. The fact that such injury may not be cognizable as <u>antitrust</u> injury does not render the Section 17200 claim infirm.

### 3. Plaintiff Has Adequately Pleaded A Tortious Interference With Prospective Economic Advantage Claim.

Plaintiff has also adequately pleaded a tortious interference with prospective economic advantage. Unlike it its RFAC, Plaintiff has adequately alleged that it suffered injury as a result of Defendant's alleged threats and attempts to organize boycotts directed at its customers. The Court therefore finds that the basis upon which it dismissed this state law claim during prior motion practice is no longer applicable.

## G. Plaintiff Has Not Alleged Sufficient Facts Against Akzo Nobel.

Plaintiff alleges no specific acts against the Akzo Nobel defendants other than to assert that they "controlled and dominated" Flexsys' rubber chemicals business and that they sold rubber

chemicals in the United States. (SAC ¶¶ 3-4.) This "unadorned invocation of dominion and control is simply not enough" to state a claim. *In re Currency Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003). In order to overcome the presumption of separateness afforded to related corporations, Plaintiff is required to plead more specific facts supporting its claims, not mere conclusory allegations.

///

///

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion as follows:

- The Court **DISMISSES** the first, second, third and fourth causes of action in the Second Amended Complaint in their entirety.
- The Court further **DISMISSES** Plaintiff's fifth and sixth causes of action against Defendants Akzo Nobel Chemical Int'l, B.V. and Akzo Nobel Chemicals, Inc.
- Plaintiff is granted leave to amend its allegations with respect to the deficiencies identified in this Order, with the exception of Plaintiffs' allegation of antitrust injury resulting from a restriction in the supply of 4-ADPA caused by Defendants, for which this Court has determined that further amendment would be futile. ***Plaintiff shall file a Third Amended Complaint, if any, within twenty (20) days of entry of this Order.*** Because Plaintiff has previously been granted leave to amend to attempt to cure these deficiencies, the Court will not be inclined to permit further leave beyond that permitted by this Order.
- In all other respects, the Motion is denied.

**IT IS SO ORDERED.**

Dated: March 11, 2008

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE